W. A. CULPEPPER, Judge ad hoc.
This is a suit for the purchase price of thirty-five automatic garage door closers and accessories sold by plaintiff to defendant, as shown by a “Purchase Requisition” dated September 26, 1957. The principal defense is that during the negotiations preceding the contract, plaintiff’s sales manager agreed orally to give defendant an exclusive franchise for Louisiana and the *465 southern part of Mississippi. On his failure to receive such a franchise, defendant refused to pay for and attempted to return said merchandise, but plaintiff refused to accept return thereof. By reconventional demand, defendant prays for judgment in the sum of $1,000 representing alleged promotional and sales expense incurred by defendant in reliance on plaintiff’s alleged promise of an exclusive franchise. After trial on the merits, the lower court awarded judgment in favor of the plaintiff as prayed for in the sum of $2,441.80, together with interest from the date of delivery of said merchandise. From said judgment defendant has appealed.
The facts show that plaintiff is in the business of manufacturing and selling various types of merchandise, including automatic garage door closers. Defendant operates a sales agency, employing several salesmen. In September of 1957, Mr. Felix H. Camp, district sales manager for plaintiff, entered into negotiations with defendant to sell him door closers of the type in question. Defendant contends Camp agreed to give him an exclusive franchise for the sale of these items at retail in Louisiana and the southern portion of Mississippi, but Mr. Camp testified positively that he at no time promised such a franchise to defendant.
These negotiations culminated in the signing of said “Purchase Requisition” on September 26, 1957. The original and at least one carbon copy were typed by Mr. Camp in defendant’s office and in defendant’s presence, after which the original was signed by defendant and his said signature reproduced by carbon on the said copy. Mr. Camp kept the original and left the carbon copy with defendant. At the outset of the trial, plaintiff attempted to introduce in evidence a photostat copy of the original, which is in the files of plaintiff’s home office in Ohio, to which offering defendant objected on the grounds that the copy was not the best evidence of the instrument in question. At that time the court sustained defendant’s objection. In subsequent testimony defendant admitted he had signed the original and that the carbon copy in his possession, also introduced in evidence, reflected his signature and was the same as the original, with the exception of five “TR 1 Transmitters” added to the original by Mr. Camp two days after defendant signed it. The court finally admitted said photostat of the original in evidence, over the objection of defendant. We are of the opinion that said photostat of the original was properly admitted in evidence by the lower court, for the reason that even though the photostat copy is secondary evidence, the correctness thereof was admitted by the defendant with the exception of the addition of the five transmitters above mentioned. See 32 C.J.S. Evidence § 819, p. 748. Although, in his testimony during the trial, defendant attempted to show that the quantity of doors ordered was not shown on the original when he signed, we find that in his answer, filed in these proceedings, the defendant admits in paragraph #5 that the original order was prepared for 35 units. Under these circumstances, we are of the opinion the trial court was correct in admitting the photostat copy as correctly representing the original purchase order signed by defendant, with the exception that the five transmitters, above mentioned, were added to said purchase order by Mr. Camp two days after defendant signed.
The merchandise was delivered to defendant on November 10, 1957. Correspondence followed, in which defendant requested that an exclusive franchise be delivered to him and plaintiff refused. Defendant then attempted to return the merchandise to plaintiff, but plaintiff refused to accept it. Defendant failed to pay for the merchandise F.O.B. 30 days net, as specified in the purchase order. This suit followed.
Defendant’s first contention is that no binding agreement was ever reached. He argues that the original purchase order as signed by defendant, not listing the five transmittors, was never accepted by plain *466 tiff; that by adding the five transmittors to the purchase order after it had been signed, plaintiff in effect made a counter-offer, which was never accepted by defendant; therefore no binding contract was ever reached. In our opinion, the original purchase order as written by Mr. Camp and signed by defendant constituted an offer by defendant to purchase. The addition thereto by Mr. Camp of the five transmittors, after defendant had signed, was a modification of the offer. Regarding this modification, Mr. Camp testified that during their negotiations he suggested to defendant that he order these five transmittors for sale to persons who might own two cars, but that in typing the purchase order he erroneously omitted the said extra transmittors. Two days after the purchase order was signed, Mr. Camp discovered the error and added the five transmittors to his copy. He wrote a letter to defendant on September 28, 1957 requesting that defendant add said transmittors to the copy of the purchase order in his possession. The defendant testified that he, being unfamiliar with the equipment, relied entirely on Mr. Camp to write the order and did not actually know whether the transmittors were omitted therefrom through error.
It is apparent from the record that this slight modification of the purchase order, adding only $94 to the total price, was not a cause of the present litigation. Defendant remained perfectly silent and inactive as to said change in his order, until his lawyer filed an answer in these proceedings. It is clear that this contention is an afterthought by defendant in an attempt to avoid the contract.
The law is clear that contracts or modifications thereof may be accepted by implication, silence or inaction. Fisk v. Rowe, La.App., 91 So.2d 65; Johnson v. Capital City Ford Company, La.App., 85 So.2d 75; LSA-C.C. Article 1811. In the instant case defendant remained silent when notified that the five transmittors had been added to his order. He remained silent when the merchandise, including the five transmittors, was delivered. When he finally did raise an objection, it was not as to the addition of the five transmittors, but as to the failure of the plaintiff to deliver him an exclusive franchise. We agree with the trial judge that a contract of sale was completed and that there was a meeting of the minds as to the things sold and the price, thereby fulfilling all of the requirements of LSA-C.C. Article 2439.
Defendant’s next contention is that, in the event the court determines there is a binding written contract of sale, he should be allowed to show that a part of the real consideration therefor was plaintiff’s oral promise to give defendant an exclusive franchise. Pretermitting the legal question as to whether defendant should be allowed to make such proof by parole, we find that actually in this case the trial judge finally allowed the testimony of defendant and his witness, Louis Abadie, that Camp agreed to an exclusive franchise. The court also admitted in evidence certain letters and other papers relevant to this issue. After considering all of this parole evidence, the trial judge concluded that no franchise had been agreed to and that it was simply a sale of merchandise, for which defendant had failed to pay.
Defendant’s final contention is that the trial court erred in giving more credence to the testimony of Felix Camp, than it did to the testimony of defendant and his witness, Louis Abadie. The jurisprudence is too well settled to require the citation of authority that the trial court’s impression of the credibility of witnesses will not be disturbed unless manifestly erroneous. Clearly there was no such manifest error in this case. Actually, we are of the ■ opinion the record fully supports the trial court’s conclusion in this regard.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.