329 So.2d 235 (1976)
BANK OF LOUISIANA IN NEW ORLEANS
v.
Walter J. CAMPBELL, d/b/a Gulf Sales Company.
No. 7279.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
Writ Refused June 9, 1976.
*236 Richards & Hoepffner, Charles E. Richards, New Orleans, for plaintiff-appellee.
Jesse S. Guillot, New Orleans, for defendant-appellant.
Before SAMUEL, MORIAL and BEER, JJ.
BEER, Judge.
Plaintiff-appellee, Bank of Louisiana in New Orleans (hereafter, Bank), sued defendant-appellant, Walter J. Campbell, d/b/a Gulf Sales Company (hereafter, Gulf), seeking damages for Gulf's failure to deliver the balance of previously ordered printed sales forms. The trial court awarded judgment in the amount of $1,451.60, the actual cost incurred by the Bank in securing delivery of the same number of identical forms from another supplier. From that judgment Gulf suspensively appeals urging that the Bank's written purchase order was orally cancelled.
Gulf additionally urges that the purchase order provided that shipment of the forms commence on May 1, 1973 to continue in increments of 150,000 per month for ten months thereafter and the Bank's refusal to accept the total order of 1,500,000 during that time period constituted a breach of the terms of the contract and relieved Gulf of liability.
In January 1973, Gulf quoted the Bank the cost of supplying 1,500,000 forms. This price included "storage, freight, desk top delivery as often as required and billing each month only for deliveries made." The Bank issued a purchase order for the forms dated January 26, 1973 which contained a handwritten notation that defendant would "ship 150 M on 5/1/73 and 150 M on [the] first of each month thereafter." This notation further provided: "This total quantity is an estimate [of a] twelve month supply." (Brackets added.)
The Bank received 793,000 forms from Gulf during the period June 1973 to July 1974. With the exception of the first delivery, the Bank prepaid each order before actual delivery and Gulf stored the forms until requested to make deliveries.
The Bank employee who originally handled the ordering of the forms left the Bank's employ in August 1973. At the trial he testified that prior to his leaving the Bank's employ he was instructed to advise Gulf that the Bank did not want any more forms to be delivered. Nevertheless, it is undisputed that although he left the Bank in August 1973, five separate deliveries of approximately 150 M each were subsequently made and paid for including deliveries in June and July, 1974. This is quite inconsistent with the assertion that the contract was cancelled in August 1973.
The trial judge apparently was of the view that there had not been an oral cancellation. We find no manifest error in this conclusion and feel bound by it. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Gulf further contends that under the terms of the purchase order, the entire *237 order for 1,500,000 forms was to be delivered within a year of first delivery set for May 1, 1973 and argues that the Bank's failure to accept shipment of the entire order within this period relieves Gulf of liability.
Obligations entered into by parties have the effect of law between them. LSA-C.C. Article 1945. The manner in which individuals make contracts is diverse. Within the confines of the law, there are contained very few limitations as to the method, manner, fashion, or system by which one may obligate himself to perform. Gulf's proposal provided that the price quoted included storage, and "desk top delivery as often as required." Gulf did not impose any time limitations on delivery and did not provide for increased cost through an escalation clause.
The Bank's purchase order is essentially an acceptance of Gulf's proposal and the handwritten notations as to commencement of deliveries and handling simply indicate the Bank's original estimation of consumption. When decreased usage of the forms became apparent, Gulf did not object but impliedly consented to continued storage with future shipments still to be delivered as indicated by the Bank's needs. Both parties continued this arrangement through July 1974. They tacitly agreed to extend the terms of the original purchase order past any specific timetable. By its own actions, Gulf impliedly indicates a continuing willingness to store the forms and deliver them as requested.
Modification of a contract may be by implication, silence, or inaction, Alliance Manufacturing Co. v. Foti, 146 So.2d 464 (La.App.4th Cir. 1962), writs refused, 243 La. 1005, 149 So.2d 763. If Bank's purchase order constituted the written contract, Gulf's acquiescence in changes in the delivery schedule constitutes a tacit acceptance of new terms. Their subsequent discovery of unforeseen factors that caused difficulty or increased expenses in the performance of their obligation cannot release them from the duty to perform. The fact that the cost of the forms went up was a problem between Gulf and its supplier. Gulf ordered 750,000 forms from its supplier on April 15, 1973 and agreed to secure the balance of 750,000 within fourteen months. They did not, however, order the balance from their supplier within that time period and costs went up. This cannot affect Gulf's agreement with the Bank. No reference by incorporation or otherwise was made of the arrangements between Gulf and its supplier in the contract between Gulf and the Bank.
Although Gulf may have had some justifiable doubt about the Bank's ultimate need for the balance of the forms that had been ordered, they took no affirmative action to resolve this doubt. It would be inequitable to permit one who has not fulfilled an agreement to successfully defend on the ground that the other party might not perform its obligations. Jones v. Whittington, 171 So.2d 764 (La.App.2nd Cir. 1965), writs refused, 247 La. 624, 172 So.2d 703. Whatever fears Gulf had regarding the Bank's performance cannot be a valid defense for failure to supply the goods at the price originally quoted after the extension of delivery dates was tacitly agreed to.
The quantum of the trial court's award does not appear to be at issue.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is affirmed at appellant's cost.
AFFIRMED.