**Gary D. ALLAN, Plaintiff-Appellant,**

v.

**James F. ARNOLD, Defendant-Appellee.**

No. 81–3026
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 22, 1982.

---

C. Emmett Pugh, New Orleans, La., for plaintiff-appellant.

Herschel L. Abbott, Jr., New Orleans, La., W. F. Hyer, Houston, Tex., for defendant-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

The appeal of this diversity jurisdiction case involves a consideration of Louisiana law governing contractual obligations and the Federal Rule of Civil Procedure relating to special jury interrogatories. Gary D. Allan complains that James F. Arnold breached a contract which contained Allan's promises to secure financing for and to promote Arnold's inventions in return for half of the profits realized from existing "ideas and inventions" and the option to purchase future "ideas and inventions." Trial of the case was bifurcated and the matter was submitted to the jury on liability alone. The submission was on special interrogatories and, based on the responses, judgment was entered rejecting Allan's demands. On appeal, Allan maintains that the jury's interrogatory answers are inconsistent and that his post-judgment motions should have been granted. We disagree and affirm.

### Context Facts

Allan, a door-to-door salesman, and Arnold, an oilfield worker, first met when Allan came to Arnold's home in 1962. After Allan concluded his sales presentation, the two began discussing Arnold's inventions. Arnold had completed several inventions, and had plans for others, but he lacked the money needed to patent and develop his ideas. Their discussions led to the execution of an agreement, which Allan asked an attorney to prepare.

On January 11, 1963, Allan and Arnold signed the contract which is the subject matter of the present litigation. The contract obliged Allan to furnish or secure the financing needed to patent, develop, and market Arnold's completed inventions and inventions *in esse*. Allan subsequently contributed a total of $70 for patent searches on two of Arnold's inventions. He also introduced Arnold to a potential investor who declined the opportunity. Then, despite Arnold's urgings, Allan did nothing further, saying that he did not have the money necessary and that his friends were not interested.

In May or June of 1963, Arnold informed Allan that their "deal was off and the agreement at an end." Allan said nothing; he did nothing. Thereafter, acting on his own and with no assistance from Allan, Arnold secured the financing for one of his inventions which became successful commercially. In 1965, investors backed Arnold in his patenting of the Hydrocouple, a device used in coupling the ends of pipes underwater. Many other inventions fol-

lowed, several of which proved to be financial successes.

Fifteen years after Arnold told Allan that their "deal was off," and following Arnold's intervening success, Allan filed the instant suit. He alleged that Arnold had breached their contract, damaging him in excess of $1,000,000.

### The Interrogatories

The jury concluded its deliberations with the following answers to the special interrogatories:

1. Did the defendant, James Arnold, breach, otherwise improperly terminate, or fail to perform the agreement of January 11, 1963?

 Yes____ No_X

2. Did the plaintiff, Gary Allan, breach, otherwise improperly terminate, or fail to perform the agreement of January 11, 1963?

 Yes____ No_X

3. Is plaintiff, Gary Allan, entitled to enforce the provisions of the agreement of January 11, 1963, against defendant, James Arnold?

 Yes____ No_X

After the responses were read, the jurors were polled and all confirmed the answers. Judgment for Arnold was entered. Allan's motions for judgment notwithstanding the verdict, for new trial, and for permission to interrogate the jurors were denied.

Allan argues that there appears to be an inconsistency in the three responses. By its answers to the first two interrogatories, the jury found that both parties had lived up to the contract. Therefore, the third interrogatory could be consistent only if the contract had been terminated validly, a result Allan maintains cannot be accomplished legally under Louisiana law.

In support of his position, Allan cites Louisiana statutory and jurisprudential authority for the proposition that commutative contracts, see La.Civ.Code arts. 1768 and 1770 (contracts involving covenants of equivalent worth), can be terminated only by the mutual consent of the contractants. See La.Civ.Code art. 1901; *Bruhl v. White*, 346 So.2d 734 (La.App.), *cert. denied*, 349 So.2d 1268 (La.1977); *W. N. Bergeron & Sons v. Caldwell Sugar Co-Op., Inc.*, 340 So.2d 1054 (La.App.1976). These authorities are valid, but they are not dispositive of the issue before us.

In his testimony, Allan denied that Arnold ever told him their agreement was at an end. Allan insists that he never acceded to that suggestion, if it were made, and he points out that the agreement was never canceled in writing.

Arnold spoke of the conversation in May or June of 1963 and, in response to questioning by Allan's counsel, observed: "All I know is I told him and Mr. Allan didn't come forth."[1] From the record, it is apparent that the jury credited Arnold's testimony and concluded that the contract was terminated because Allan either could not or would not fulfill his commitments. Therefore, he did not resist Arnold's effort to dissolve the agreement.

### The Law

The issue presented is whether the jury's response to Interrogatory 3, exonerating Arnold from liability, legally is appropriate and reconcilable with the responses to the first two interrogatories. We conclude that the answers are reconcilable and that the answer to number 3 is sound legally.

■ The jury obviously believed Arnold when he said he told Allan, sometime in May or June of 1963, that their agreement of January 11 was at an end. When Arnold announced his position and intent, Allan stood mute and inactive. The jury, under Louisiana law, was entitled to interpret Allan's silence and inaction as an implied or tacit concurrence in the dissolution.

1. In addition, the following colloquy transpired at trial between Allan's attorney and Arnold:

 Q. In this May, June supposed termination in 1963, did Mr. Allan ever indicate to you that you could go forth and make arrangements with anyone else and not account to him for the royalties?

 A. He did not. *He didn't indicate anything.* (Emphasis added.)

Article 1901 of the Louisiana Civil Code prescribes that agreements legally entered into "can not be revoked, unless by mutual consent of the parties ...." Contractual consent need not be verbalized. Indeed, the Louisiana Civil Code recognizes that obligations may arise from silence and inaction.[2] *A fortiori*, that which is sufficient to create a contractual obligation, is sufficient to dissolve it.[3]

### Limitations

■ Even if we were to resolve that the evidence does not support a conclusion that the agreement of January, 1963 was dissolved properly, Allan's claim is not timely. Arnold raised the limitation question in the trial court. If Arnold illegally announced termination of the agreement, that act constituted an active breach of contract, which obviated the necessity that he be put in default as a prerequisite to suit. In May or June of 1963, Allan's cause of action for breach of contract arose.[4] Under Louisiana Civil Code article 3544, such an action must be brought within 10 years. *See Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314 (5th Cir. 1981) (applying Louisiana law). The time for filing suit expired in 1973; the instant suit was filed in 1978.

We conclude that the jury's answers to the special interrogatories are in accord with Louisiana law and consistent with the provisions of Rule 49(a) of the Federal Rules of Civil Procedure. The trial court's denials of the motions for a judgment n. o. v. and a new trial are supported by the evidence and controlling jurisprudence. *See, e.g., Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc); *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360 (5th Cir. 1980); *Bergeron v. Central Freight Lines, Inc.*, 504 F.2d 889 (5th Cir. 1974).[5]

AFFIRMED.

---

2. La.Civ.Code art. 1811. The proposition as well as the assent to a contract may be express or implied:

Express when evinced by words, either written or spoken;

Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.

La.Civ. Code art. 1817 states: "Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation ...."

3. Our conclusion is based upon settled Louisiana law. "A written contract may be modified or nullified by mutual consent of the parties." *Watson v. Haik*, 393 So.2d 173, 174 (La.App. 1980) (*citing* La.Civ.Code arts. 1901 & 1945; *Arceneaux v. Adams*, 366 So.2d 1025 (La.App. 1978)). *See Prisock v. Boyd*, 199 So.2d 373 (La.App.1967). "And a written contract may be modified by oral agreement, provided the original contract was not required to be in writing." *Hornsby v. Ray*, 327 So.2d 146, 150 (La.App.1976) (*citing WWOM, Inc. v. Grapes*, 181 So.2d 289 (La.App.1965)). Finally, the proposition that the "[m]odification of a contract may be by implication, silence, or inaction," *Bank of Louisiana in New Orleans v. Campbell*, 329 So.2d 235, 237 (La.App.1976) (*citing Alliance Mfg. Co. v. Foti*, 146 So.2d 464 (La.App.1962)), is accepted in Louisiana.

4. While, as a general rule, a party suing to recover on a commutative contract must first place the other contractant in default, *see, e.g.,* La.Civ.Code arts. 1913 and 1933; *Lawton v. Louisiana Pacific Corp.*, 344 So.2d 1129 (La. App.1977), "it is not necessary to put one formally in default who refuses to perform or who acknowledges an inability to perform." *Fox v. Doll*, 221 La. 427, 434, 59 So.2d 443, 445 (1952). *See Myers v. Sudo*, 377 So.2d 482 (La.App. 1979). Moreover, when one of the parties "refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract which relieves the other party of the obligation of continuing to perform under the contract." *Andrew Dev. Corp. v. West Esplanade Corp.*, 347 So.2d 210, 212–13 (La.1977). *See, e.g., Marek v. McHardy*, 234 La. 841, 101 So.2d 689 (1958) (doctrine of anticipatory breach of contract recognized as actionable in Louisiana); *Eota Realty Co. v. Carter Oil Co.*, 225 La. 790, 74 So.2d 30 (1954); *Stockelback v. Bradley*, 159 La. 336, 105 So. 363 (1925).

5. We find it unnecessary to consider the claim that the district court erred in denying Allan's motion to interrogate the jurors post-decision. This request was made because one or more of the jurors supposedly was heard to comment that the wrong line for Interrogatory No. 2 had been marked but that "it didn't matter as long as they were sure that there was no payment to the plaintiff." We are not persuaded that this report in any way affected the district court's

judgment. We have ignored the comment; it does not influence the decision we reach.