494 So.2d 553 (1986)
ST. JOHN THE BAPTIST PARISH ASSOCIATION OF EDUCATORS, Wilhemina Armour, et als
v.
ST. JOHN THE BAPTIST PARISH SCHOOL BOARD, et als.
No. 86-CA-96.
Court of Appeal of Louisiana, Fifth Circuit.
July 23, 1986.
As Corrected August 25, 1986.
Rehearing Denied October 17, 1986.
Writ Granted December 12, 1986.
*554 Louis L. Robein, Jr., Gardner, Robein & Healey, Metairie, for plaintiffs/appellants.
John L. Diassellis, III, LaPlace, for defendants/appellees.
Before BOWES and WICKER, JJ., and NACCARI, J. Pro Tem.
BOWES, Judge.
This case arises out of a reduction in force implemented by the St. John The Baptist Parish School Board (hereinafter "the Board") in February, 1985, some three and one-half months after the conclusion of a strike action by employees of the Board. Plaintiffs-appellants, employees who were laid off, filed suit seeking to be reinstated with restoration of any lost benefits. Plaintiffs alleged that the Board violated the terms of the previously negotiated contract in that it used a "super-seniority" list, which constituted a direct reprisal against those who participated in the strike action, in direct violation of the October, 1984, contract, in implementing the reduction in force. The trial court held for the defendants[1]; we reverse in part, affirm in part, amend in part and render.
*555 Appellants engaged in a lawful strike and work stoppage against the Board, beginning late August, 1984, and ending in the early morning hours of October 22, 1984. During the course of this strike, the petitioners, as well as a great majority of the Board's employees, were represented in bargaining by the St. John Association of Educators (hereinafter "SJAE").
An effort was made by the parties to end the strike on October 9, 1984, when the Board issued a "guarantee" to all striking employees, promising:
(a) A full 5% pay increase on the entire salary schedule, retroactive to July 1, 1984;
(b) A public referendum to determine the question of collective bargaining representation;
(c) A full insurance program for every school employee; a guarantee of no reprisals against any striking or non-striking employee or student;
(d) A full grievance procedure; and,
(e) An adjusted school year as approved by the Board of Elementary and Secondary Education to account for days missed as a result of the strike.
The striking employees initially rejected the October 9, 1984 proposal. Thereafter, bargaining continued on an occasional and infrequent basis.
On Wednesday, October 17, 1984, Superintendent Albert T. Becnel, acting with dubious authority (no open, public meeting of the Board had been held since August 27, 1984) issued a one-page letter to all school employees. The pertinent part of the letter stated:
You are hereby advised that the School Board will presume that all employees who have not returned to work by Friday, October 19, 1984, do not intend to work for the School Board. Accordingly, effective the end of the school day Friday, October 19, 1984, those school employees who remained at work during the strikethose who have returned to workand those who are newly hired all those will be assured of not being laid off as a result of other school employees returning to the school system. Furthermore, the positions of those school employees not at work by the end of the school day Friday, October 19, 1984, are declared vacant and considered abandonedanyone accept [sic] to return to the school system after Friday will be considered as a new employee.
Appellants and most other striking employees refused to work on October 19th, but rather issued, on October 18, 1984, a letter to President Alvin Perret which contested the superintendent's assertion that their positions would be considered abandoned. The letter further declared the petitioners' intention to return to work "when a fair and equitable settlement is reached with the school employees." The letter reminded President Perret that the SJAE bargaining team had repeatedly met with all members of the Board and, most importantly, that a comprehensive proposal was still on the table, one that "legally protects *556 (employees) from adverse retaliatory action." The letter asked that the Board adopt the "latest amended proposal." Finally, the letter requested a reply.
No reply was immediately forthcoming; however, on October 19th, the SJAE bargaining team was called to the Board office by Board Member Charles Watkins. SJAE representatives met with two board members and St. John the Baptist Parish Council President Arnold Labat, who served as a mediator. The latest proposal of the SJAE was discussed. However, that negotiating session broke down at approximately 9:00 p.m. Member Duhon publicly announced to the media that the October 19th deadline, which had been extended earlier that day to approximately 5:00 p.m., later to midnight, was then withdrawn and no longer in effect.
Cooler heads prevailed over the weekend. By Sunday, October 21st, there was movement on both sides of the bargaining table. By late that Sunday night, there was a consensus among Board Members to accept a compromise on the overall "guarantee." The results of those continuing negotiations were expressed in a "clarification" which was subsequently affixed to the original October 9, 1984 guarantee. This document was adopted as a statement of Board policy and practice on the following morning, Monday, October 22, 1984, at an open meeting of the Board.
At that meeting, Board Member Bonura offered the following motion: "Mr. Perret, I move that we adopt the Board document notarized on October 9, 1984, with the attached clarifications as amended and herein attached." The motion was passed 9 to 0, with one member of the Board being absent.
The pertinent portion, section 4, of the October 9, 1984, contract follows:
4. FAIR TREATMENT AND NO REPRISALS AGAINST ANY STRIKING OR NON-STRIKING EMPLOYEES OR CHILDREN
A. Neither the St. John the Baptist Parish School Board nor any of its employees shall take reprisal against any employee of the St. John the Baptist Parish School Board for participation in, or support of, the strike, or for continuing in the performance of his/her appointed duties. Neither the St. John the Baptist Parish School Board nor any of its employees shall discriminate in any manner against any St. John the Baptist Parish School Board employee for participating in, or supporting, the strike, or for continuing in the performance of his or her appointed duties. [...]
D. Reduction in Force [hereinafter RIF] PolicySt. John the Baptist Parish School BoardAdopted July 6, 1983.[2] [...]
Teachers and Other Certificated Personnel
When reductions in force are necessary in the teaching and other certificated personnel categories, the first layoffs will be made from the personnel *557 who have been employed as contract substitutes. If further reduction in force is necessary, the School Board will then consider layoffs among regular or permanent contract teachers and other certificated personnel. Non-tenured personnel in this system will be considered for layoff before considering tenured employees. Layoffs of teachers and other certificated personnel in permanent non-tenured and tenured categories will be based on the following criteria, in the priority order as listed:
1. The personnel needs of the school system to operate a balanced educational program as compared to the number of regularly employed, fully qualified and fully certificated personnel in the school system.
2. Areas of certification.
3. Academic preparation, including majors and minors in subject areas, grade levels or administrative areas, educational degrees and additional units of college or university credit.
4. Whenever all of the above criteria are equal, seniority defined as the total contractual teaching and/or administrative experience in the St. John the Baptist Parish School system, will be the determining factor.
5. In areas where there are an insufficient number of personnel currently employed as regular, contractual employees, appropriately certificated to meet the needs of the school system, attempts will be made to find the needed personnel from among those scheduled for layoff, provided that such personnel obtain temporary certification and are willing to take the courses necessary to become fully certified in the area of need and time required.
6. Performance evaluations, attendance and total years of previous experience are other factors that will be given consideration.
Classified Personnel
Reduction in force of classified management level and other areas of classified employees will be based on the following criteria in the priority order listed:
1. Management, craft or labor force seniority (when applicable).
2. Seniority, defined as total years of employment in the St. John the Baptist Parish School System.
3. Academic or other qualifying preparation (when applicable).
4. Performance evaluations.
5. Date of initial physical examination (contracted school bus operators)
6. Date of application (regular school bus drivers).
7. Attendance record on the job.
Other Policy Provisions Governing Reduction in Force Seniority
Seniority will be determined on the basis of employment with the St. John the Baptist Parish School system as follows:
1. A year's seniority is determined by the length of the work year for that job classification. Full-time, regular employees will be given credit for seniority on an accumulative basis for all full years and one-half years worked in an appointed classified or certificated job classification.
2. Board approved leave with pay will count toward seniority.
3. Seniority begins to accrue on the initial date of Board appointment.
4. Lay-off time will not terminate continuous service, but seniority will not accrue during these periods.
5. Tenure employees of St. John the Baptist Parish School System employed in any and all programs gain time applied to tenure as granted by board resolution.[3]
*558 It should be noted that (1) "the attached clarifications as amended" to the October 9, 1984 contract in no way affected section 4, supra; (2) the October 17, 1984 letter of Superintendent Becnel was not made part of the contract; and (3) in fact, the controversial October 17th letter was not even mentioned at the meeting.
Immediately following the Board action on October 22, 1984, the SJAE approved the contract and offered it to its members, who ratified the approval. That same day, the strike ended and the employee-appellants returned to work.
The employment status of Board employees was not again officially discussed or considered by the Board until its November 29, 1984 meeting. At that time, the Board considered a "revised staffing plan." The minutes reflect that the staffing plan which necessitated future layoffs was adopted. According to the official minutes, Cleveland Farlough, then Assistant Superintendent, with personnel responsibilities, "reported that seniority lists were not complete and that the RIF policy is in effect as per parish policy already adopted."
The groundwork leading up to the layoffs of the petitioners was set in motion at the January 3, 1985 meeting of the Board, wherein, on the motion of Member Bonura, the October 17, 1984 letter of the superintendent was "accepted and implemented."
On or about January 9, 1985, Farlough prepared finalized teacher aide and school secretary "experience" listings. Remarkably, these experience or seniority rosters ranked aides and secretaries, not in the order of their actual job or system seniority in the school system, but, instead, in an order reflective of (1) those employees who did not strike, chronologically ordered within that particular ranking, followed by (2) employees who returned to work during the course of the strike, chronologically ordered in accordance with date of their return, and (3) followed by a third group of striking employees (including petitioners) who returned on October 22, 1984, (those employees ranked according to their actual seniority dates within that third group). Despite the requirement in the RIF policy of ranking employees in accordance with actual job seniority first, followed by system seniority, no effort was made by the Board to perfect such a listing.
The subsequent reductions in force, which formed the basis of this suit, were made in accordance with the above described lists. The result of using the prepared list was that those employees who did not strike, those who returned to work on or before the superintendent's October 19, 1984 deadline, and those hired during the strike, were awarded "super-seniority" over their striking counterparts.
*559 The Board did not dispute the contention that it entered into a valid, binding agreement with the petitioners and other striking employees on October 22, 1984, and that the adopted agreement included, inter alia, a promise, in Section 4(A) of the contract that the School Board would not take any "reprisals" against any employee of the St. John the Baptist Parish School Board "for participation in, or support of the strike...." The same clause provides that the Board would not "discriminate in any manner against any ... employee for participating in, or supporting the strike...." Section 4(D) of the document restates the July 6, 1983, Reduction in Force Policy adopted, and continued in effect by the Board, in compliance with La.R.S. 17:81.4.
Also significant to this action are the provisions relating to the priority in layoffs. The subsection entitled "Classified Personnel" of Section 4(D) establishes "management, craft or labor force seniority" as the first priority to determine the order of layoffs. The second priority is general seniority, which is defined as total years of employment in the school system. Five other priority factors are established, none of which are pertinent to this action.
It is uncontroverted that most, if not all, petitioners have more craft or labor force seniority (and a handful have more total system-wide seniority) than non-striking employees who survived the February, 1985, layoffs. The Board's explanation for its restructuring of seniority rosters in February, 1985, is simply that it had a commitment or "oral agreement" to non-striking employees to protect them (at the expense of the petitioners and other striking employees) from the 1985 layoffs.
At the time the Board entered into the October 9, 1984 contract with its employees, the following laws were in effect:
LSA C.C. art. 1901:
Agreements legally entered into have the effect of laws on those who have formed them.
They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
They must be performed with good faith.
and LSA C.C. art. 1945:
Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:

First That no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;

SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;

Third That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;

Fourth That it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.
In Magri v. Lee, 470 So.2d 910 (La.App. 5th Cir.1985), a panel of this court, of which this writer was a member, stated:
[1,2] Courts of this State are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit, and lead to no absurd conclusions or consequences. LSA-C.C. art. 1945 (C.C. art. 2045-2046) Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that it was not explained or that he did not understand it. Carter's Insurance Agency, Inc. v. Franklin, 428 So.2d 808 (La.App. 1st Cir.1983).
[3,4] Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. They must be *560 interpreted in a common sense fashion, according to the words of the contract in their common and usual significance. LSA-C.C. art. 1946 (C.C. art. 2047). The "agreement" in issue must be viewed as a whole and practical effect given to all parts, according to the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. LSA-C.C. art. 1955 (C.C. art. 2050).
In his reasons for judgment, the trial judge stated: "In order to staff the schools, promises to new employees were required which later gave the appearance of some unfairness by the Board." We find Judge Malik's reference and his consideration of promises made by the Board to new employees constituted error. In resolving the issues presented between the litigants of this suit, only the contract between the parties can be considered. Any side agreement by the Board with third parties cannot affect the rights of the plaintiffs under their contract with the Board.
Likewise, the October 17, 1984 letter, authored by Superintendent Becnel, is without effect on the contract approved by the Board and ratified by appellants on October 22, 1984. This letter was not made part of the contract as it well could have been. However, had this document been included, the strike very probably would not have ended when it did. The Board, after entering a contract, cannot, three months later, unilaterally alter the terms of said contract. See Sims-Smith, Ltd. v. Stokes, 466 So.2d 480 (La.App. 5th Cir. 1985). A written contract may be modified, nullified, revoked or abrogated only upon mutual consent of the parties. Dejoie v. Roussell, 447 So.2d 104 (La.App. 4th Cir. 1984); Ed Bulliard Co., Inc. v. Foretich-Zimmer Const. Co., Inc., 451 So.2d 29 (La. App. 3rd Cir.1984).
Accordingly, we reverse the judgment of the trial judge in the cases of appellants Marie Jackson, Sandra Fritsche, M. Martha Leach, Ivy W. Schnyder, Rosemary Roy, Marie Millet, Patricia Nicholas, Matilda Catorie, Faye Reine, Carlis Johnson, Marilyn Scott, Susan Cook, Donna M. Perrilloux, Claudia Brown, Ann Marie Fenroy, Norma Dukes, Carolyn Boudouin and Peggy Tassin. In the cases of the foregoing plaintiffs, we order that they be reinstated with full uninterrupted seniority and be placed in the same economic position that they would have enjoyed had they not participated in the strike action and not have been dismissed in February, 1985, including all salary and insurance benefits, and defendant's contribution to the appropriate retirement system.
Finally, we order that the seniority lists prepared by the Board be changed so that no employee who participated in the work stoppage in the fall of 1984 lose any seniority or in any way be penalized for his or her participation in said work stoppage, all in agreement with the terms (the "four corners") of the October 9, 1984 contract as accepted by all parties on October 22, 1984.
We affirm the action of the trial judge as to his finding that the SJAE has the right to represent any school board employee who pays dues to said union to negotiate any labor dispute on behalf of its members.
For the foregoing reasons, the judgment appealed is reversed in part, affirmed in part, amended in part and rendered. All costs of this appeal are to be taxed to appellee.
REVERSED IN PART, AFFIRMED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[1] After hearing the evidence, argument of counsel and considering the law, It is the Judgment of this Court that there exists insufficient grounds to order the injunction or other relief prayed for by Petitioners (with one (1) exception) St. John the Baptist Parish Association of Educators; Wilhemina Armour; Marie Jackson; Sandra Fritsche; M. Martha Leach; Ivy W. Schnyder; Rosemary Roy, or Marie Millet,

Therefore, as to these Plaintiffs their suit is dismissed and Judgment is rendered in favor of the St. John the Baptist Parish School Board; Alvin M. Perret; Harry Robottom; Albert T. Becnel; Charles J. Watkins; Gary A. Keating; Martin J. Bonura; Charles M. Duhon; Kathryn B. Page; Donald J. Cox; Fernand A. Becnel and Felix A. LeBouef (Hereinafter referred to as the Board and/or Superintendent.)
With respect to all parties, the Boards reduction in force policy resulting in the Senority List of All Employees, is held to be a valid constitutional act of the Board and Petitioners are without standing to complain.
With respect to the dismissal of Kitty W. Goudia, said employee was at the time of trial employed by the Defendants, Therefore her cause of action is moot and dismissed at Defendants costs;
With respect to the dismissal of Geraldine Scioneaux, this Court finds as a matter of fact that the computation of experience (Exhibit # 7) was inaccurate and that this employee had in excess of 17 years of employment with the Defendants and regardless of her return date to employment, had in excess of several years of experience beyond those who were retained by the Board and there is Judgment in her favor and against the Board and/or Superintendent granting a Preliminary Injunction as prayed for; Further, said Plaintiff shall be reinstated in her former position, at a salary equal to any other employee at the same or similar occupation with like experience, Further
IT IS ORDERED, that Geraldine Scioneaux shall be placed in the same economic position that she would have enjoyed, had she been rehired as of October 22, 1984 without being dismissed in February of 1985 to the present time including all salary, insurance benefits as well as Defendant's contribution to the State Retirement System, and all other relief proper by way of the Restraining Order prayed for.
[2] Contract continued:

When conditions, such as a significant enrollment decline, the loss of federal or special state funds, the discontinuance of special programs or projects, or a marked decline in school revenues necessitate a reduction in force greater than what can be accommodated through attrition and appropriate reassignments, it shall be the policy of the St. John the Baptist Parish School Board to accomplish the reduction in force utilizing the following priorities and procedures. All possible alternatives to the layoffs of employees will be explored and used prior to implementation of the Reduction in Force Policy. Reduction in force will be made on a system-wide basis in categories of employees, and not on a building-by-building basis. As appropriate and when possible, administrative, supervisory and classified personnel positions will be reduced commensurate with the reductions in the number of teaching positions. The basic considerations in making decisions regarding the reduction in force will be administration and maintenance of a quality, balanced educational program and services for the students of the St. John the Baptist Parish School System. Therefore, it is understood that in making decisions regarding the reduction in force of certificated and classified personnel in the various areas of employment, persons with the skills necessary to provide a balanced educational program and to maintain and operate the school system must be retained.
[3] Contract concludes:

General and Specific Notices
A timely, general notice will be given to all employees in respective categories when it has been determined that reduction in force is necessary in the respective areas. Subsequently, individual employees in the affected areas will receive an individual written specific notice of layoff.
Recall Procedures
Names of full-time, long-term appointed substitute, non-tenured and tenured employees, laid off because of reduction in force, will be placed on a recall list for a period of three (3) years from the effective date of layoff. Employees will be recalled in reverse order of their layoff according to the same criteria used to determine the reduction in force. Employees will be offered reemployment as vacant positions occur for which they are certificated (within their respective levels and departments and at other levels). Offers of positions will be made by certified mail, return receipt requested.
An employee must accept or reject an offered appointment within fourteen (14) calendar days after the mailing. If the employee rejects an offer of appointment to a position same as or equivalent to that which was held before reduction in forceor does not respond according to procedure, the name of the employee will be removed from the recall list.
It shall be the responsibility of employee on the recall list to notify the Personnel Office, in writing, of changes of address.
DEFINITION
Lay off: Verb, two words. The Board will lay off the staff.
Lay-off: Adjective, hyphenated. This is the lay-off procedure.
Layoff: Noun. Layoff is one word.
Board approved leave: Leave of absence granted by the Board and shown on official Personnel Changes.
Certificated Personnel: Employees whose present positions require a Louisiana teacher's certificate or whose initial position in the Parish required a teacher's certificate.