GOTHARD, Judge.
Plaintiff, Jules Wise, instituted this suit against defendant, Mark Dufresne, seeking to recover damages against defendant for the alleged breach of contracts to frame, trim, and supervise the construction of defendant’s house in Destrehan, Louisiana. Damages claimed by plaintiff amounting to $32,000 allegedly sustained from said cancellations are for loss of profits. Defendant denied the allegations of plaintiff’s petition and reconvened for the sum of $600, the amount of an alleged personal loan made to plaintiff.
Judgment was rendered by the trial court dismissing plaintiff’s suit and defendant’s reconventional demand for the following reasons, which we affirm:
The court finds that as a matter of fact that Mr. Dufresne and Mr. Wise certainly had conversations and had probably come to an agreement where Mr. Du-fresne was going to pay Mr. Wise the sum of $500 a week to supervise his home. And they actually started off on this basis with pilings where Mr. Wise was paid certain funds to supervise the installation of the pilings.
With respect to that contract to supervise, the court finds that that’s a contract or agreement or a term of employment that could have been terminated on a day-to-day basis. Mr. Wise had no expectation that this was anything else other than that. At any time that Mr. Du-fresne would have become dissatisfied with Mr. Wise or, indeed, any supervisor of the construction of his home, he would have a right to terminate that agreement.
Unfortunately for Mr. Wise, and I don’t know what the reason was, there was (sic) some problems with the telephones for a period of six or seven days? Mr. Dufresne could not contact you. When this happened Mr. Dufresne had every right to terminate whatever arrangements he had with Mr. Wise, including any proposal that he might have accepted for framing. Certainly if Mr. Dufresne was not satisfied with Mr. Wise’s job as a supervisor because he was not available, then he had no right to expect that anything better would happen if he used him as the framer, although from what I understand is the testimony he did not specifically advise Mr. Tranchina not to use Mr. Wise, but gave him a broad range of latitude that as long as the prices were close, Mr. Tranchina as supervisor had authority to use subcontractors that he wanted.
Mr. Tranchina, based upon the fact that Mr. Dufresne had had previous problems with Mr. Wise as supervisor of the construction, decided on his own not to use Mr. Wise to do the framing. And the court finds that Mr. Wise had no vested interest in the so-called framing contract, which is a change order form, which does not provide the normal things that you would expect to find in a framing contract as now being used by Mr. Wise and wisely so, because this little *862 agreement just leaves too much to the imagination, particularly when it comes down to the insurance provisions, which had Mr. Dufresne used Mr. Wise and someone was injured on that job, a workman injured on that job, he would have found himself in a much nastier lawsuit that he finds himself in now.
With respect to the reconventional demand on the $600, the court will accept Mr. Wise’s statement that it is normal in the business to obtain draws at times, but many times it is not normal to obtain an advance. Framers are normally paid for work performed. And while there may not have been a meeting of the minds, with Mr. Dufresne thinking it was a loan if Mr. Wise didn’t do the framing. Mr. Wise thinking it was strictly an advance on the framing for what he thought was a contract he had that could not be vitiated, the court finds it will make no decision on that as such, but will rather award Mr. Wise a supervision fee of $600 for the work that he did in connection with getting the plumber, the painter, cabinet maker, and I think Pon-chartrain Air Conditioner to actually submit a bid to Mr. Dufresne to see if that bid was acceptable. I assume it took some effort on Mr. Wise’s part, and I count that as part of the supervision for which he has not been paid.
Plaintiff has appealed from this judgment, taking the position that we should start with the assumption that his bid to frame the house was a completed contract in which he had a vested interest because the bid was signed by the defendant. We disagree.
Defendant testified that he signed plaintiff’s bid just as he signed each of the other bids he received. Although he also testified that he accepted plaintiff’s bid, we take his testimony to mean simply that he acknowledged the bid. We feel this interpretation is particularly supported by the fact that defendant’s signature on the bid was not accompanied by the usual language indicating release of the work to the particular bidder, in this case plaintiff.
Considering these circumstances, the trial judge’s conclusion that the plaintiff had no vested interest in a framing contract is supported in the evidence. This factual determination is not manifestly erroneous and will not be disturbed on appeal. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Similarly, we reject plaintiff’s contention that we should find that defendant accepted his offer to trim the house since defendant’s testimony is riddled with discrepancies and therefore suspect.
The alleged discrepant testimony that plaintiff points to, dealt with the reason why defendant’s general contractor, Sal Tranchina, chose not to subcontract the trimming job to plaintiff. Defendant indicated in his testimony that this decision may have been based on Mr. Tranchina’s knowledge of plaintiff’s reputation. Mr. Tranchina testified that he was not previously familiar with plaintiff’s reputation. He stated that he was authorized by defendant to subcontract the trimming job to plaintiff, but he chose not to because of the problems that defendant had had getting in touch with him.
We do not perceive that Mr. Tranchina’s testimony here contradicts or discredits defendant’s testimony. Nor have we found any evidence to otherwise support plaintiff’s contention that the parties orally agreed that plaintiff would do the trim work on defendant’s house.
Next, plaintiff contends that because defendant agreed that he would undertake the framing and trimming of his house and supervise its construction, then his termination without cause and without defendant having placed him in default gives rise to defendant’s liability for the profits he would have earned had he been able to complete the work as provided by LSA-C.C. art. 2765.[1]
As previously stated, however, the evidence does not support plaintiff’s contention that defendant contracted the framing *863 and trimming work out to him. With regard to plaintiffs employment as defendant’s construction supervisor, we observe that plaintiff does not allege that he was hired as anything other than a construction supervisor on a weekly basis. He was not hired as defendant’s general contractor, though he clearly attempted to gather bids for the defendant in connection with getting a plumber, painter, and cabinet maker. Accordingly, we conclude, as did the trial judge, that plaintiff’s employment as supervisor could be terminated at defendant’s will, with or without cause, and without giving rise to his liability for plaintiff’s lost profits. LSA-C.C. art. 2747.[2]
Finally, we find meritless plaintiff’s allegation that the trial court awarded him $600 but failed to designate the award in the judgment. The trial court’s dismissal of the defendant’s reconventional demand for reimbursement of $600 resulted in the award plaintiff speaks of here. Since plaintiff was not required to make the $600 reimbursement to defendant, he has already received the award he now claims.
For the reasons discussed, the trial court’s judgment is affirmed.
AFFIRMED.

. LSA-C.C. art. 2765 provides:
The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor al *863 ready incurred, and such damages as the nature of the case may require.

. LSA-C.C. art. 2747 provides:
. A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.