550 So.2d 968 (1989)
PROFESSIONAL CONSTRUCTION SERVICES, INC.
v.
LEE M. MARCELLO CONTRACTOR, INC.
No. 89-CA-202.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1989.
Writ Denied January 5, 1990.
*969 Lawrence A. Mann, Donald E. McKay, Jr., Leake & Anderson, New Orleans, for plaintiff/appellant.
Michael I. Rodriguez, New Orleans, for defendant/appellee.
Before KLIEBERT, BOWES and GOTHARD, JJ.
GOTHARD, Judge.
Plaintiff, Professional Construction Services, Inc. (PCS), instituted this suit against defendant, Lee M. Marcello Contractor, Inc. (Marcello) for the alleged breach of a subcontract for concrete work at the E.I. Dupont de Nemours drum storage plant in La Place. PCS claimed damages totalling $42,236.63 for costs incurred in completion of the job and payment of Marcello's debts to materialmen. Marcello answered and filed a reconventional demand alleging PCS breached the contract by failing to pay progress payments and by firing Marcello unjustly.
After hearing the merits the trial court found in favor of Marcello in the amount of $11,219.36. In the reasons for judgment the trial court found 60% of the work had been completed in a proper and timely manner with no breach of contract. The trial court calculated the award due Marcello in the following manner:

60% of contract price of $58,260.00 $34,956.00
Less:
Advance March 5, 1987 $ 4,000.00
Bills paid by Professional
Construction:
 H. Construction Co., Inc. $ 7,000.00
 Building Specialties Co. $ 6,000.00
 Mid-South Steel $ 1,338.75
 National Polyfab Corp. $ 5,397.89
 __________
Judgment for Marcello
Contractor, Inc. $11,219.36

PCS has appealed from this judgment taking the position that the evidence does not support the findings and the trial court's calculation of damages is manifestly erroneous as a matter of law and fact. We affirm.
The evidence reveals that PCS contracted to act as general contractor for construction of a drum storage plant in La Place for E.I. Dupont de nemours. On February 12, 1987 Marcello entered into a written subcontract agreement with PCS to perform all of the concrete work on the plant, including the building foundation, parking lot and three small catch basins. The subcontract agreement provides in pertinent part as follows:
*970 Time is of essence in this contract and we are to meet the schedule set up by Dupont for the completion of this work. This subcontractor will work whatever time is necessary to accomplish this, furnishing whatever labor and/or materials necessary to accomplish the schedule.
All of the terms and conditions of the Dupont inquiry are included in this subcontract as if written therein.

(3) Subcontract Price:
 Original quoted price: $58,586.00
 Revision due to the reduction in
 the size of the building: (450.00)
 Addition for hand excavation: + 124.00
 __________
 Total amount due this
 subcontract $58,260.00

The contract contains no provisions for progress payments.
As work on the project progressed, Marcello was unable to meet payroll obligations. He testified that payments due, but unreceived, from two other unrelated jobs precipitated his financial difficulties. Marcello requested and received a $4,000.00 advance on the contract from PCS.
At trial Lee Marcello testified that two PCS representatives, Freddie Yoder and Leonard Hebert, promised to pay a progress payment upon completion of the first concrete pour, that pour occurred on March 16, 1987 and a bill was submitted to PCS the next day.
A meeting was set up between the parties for March 18, 1987. At that meeting PCS advised Marcello that he was in default of his contract for substandard and untimely work. No further payments were made to Marcello. Marcello admitted at trial that without the anticipated progress payment he could not complete the contract since he was behind two payrolls at that point and could not continue without sufficient funding. However, he denied that his work was inferior or untimely.
What actually was agreed upon at the March 18, 1987 meeting between Lee Marcello and Wallace Guillot representing Marcello, and Freddie Yoder, Leonard Hebert and Blaze Gagliano representing PCS is in dispute. PCS informed Marcello of its understanding of the agreement by way of a registered letter written on March 19, 1987. The body of that letter, made part of the record, reads as follows:
Dear Mr. Marcello:
This letter will confirm the meeting in our conference room on Wednesday, March 18, 1987 in connection with your subcontract with us on the subject project.
We discussed the progress of the work, the quality of the work, and the non-payment of Lee Marcello Contractor to his personnel.
It was decided at the conclusion of the meeting that it would be to everyone's benefit for Professional Construction Services, Inc. to place Lee Marcello in default of his subcontract and take over his work.
We propose to use the material and any equipment that you may have on the jobsite to complete this work, to charge all costs of completing the work to the account of Lee M. Marcello Contractor, and at the conclusion of the job, to have an accounting and to either pay you the difference between your subcontract price and what we have spent or to send you an invoice if there is an overage.
You agreed to this method of procedure and you are to assist us in all possible ways to complete the work on schedule and to lend any assistance that you could to help us.
We pointed out to you that there are several of your workers who have complained to our superintendent, and they have also called our office, that they have not been paid. You agreed to arrange for their payment and you are to see that there are no labor liens placed on the job by these workers.
You are responsible for all invoices that you have incurred to date on the job and will see that there (sic) are properly discharged.
At trial Freddie Yoder and Leonard Hebert verified that agreement. Mr. Yoder testified that Marcello seemed relieved to allow PCS to take over the job. Both Yoder and Leonard agreed that the letter accurately represented the agreement between the parties formulated at the March 18th meeting.
*971 Lee Marcello admitted that he was advised that he was being placed in default at the meeting but asserts that he was not in agreement with the proposal made in the letter. However, there is no indication that Marcello objected to the letter at the time it was received.
Guillot testified that Marcello agreed to PCS taking over the job when it was certain that no progress payments would be made. Both Marcello and Guillot denied that they agreed to be responsible for payment due to others for the completion of the work.
Although there is testimony to the fact that Marcello was behind schedule in his work at the time he was placed in default, we cannot say that the trial court erred in finding that there was no breach of contract by Marcello for untimely execution. The subcontract states that time is of the essence and ties the time schedule to Dupont. There were no witnesses offered to present Dupont's position on the timeliness of Marcello's work.
Mr. Yoder testified that Marcello was on the job from the beginning for a total of about five weeks. He credited Marcello with completion of about 25% of the work on the contract including the first of three pours and some preparation including framing of other pours. Yoder admits he couldn't be sure what percentage of the preliminary work Marcello had done on the other pours. There is conflicting testimony over whether the contingent of men Marcello employed at any given time was sufficient to accomplish the task in a timely manner. However, there is no indication that Marcello was not working on a daily basis, with the exception of some rain delays.
Marcello argues that PCS caused some of the delay by failing to complete preliminary work necessary before Marcello could mobilize on the site. PCS admits about two weeks of such work was necessary but argues Marcello was working in other areas during this time.
Although PCS alleges the work done by Marcello was defective, no proof of that claim, other than the self-serving testimony of PCS representatives, was offered. Proof of a failure to perform on a contract in a workmanlike manner requires some showing of a want of skill, efficiency or knowledge, or some lack of ordinary care in the performance of the work or in the selection of suitable equipment or materials. Tiger Well Service, Inc. v. Kimball Production Co., 343 So.2d 1153 (La.App. 3rd Cir.1977); Gagliano v. Namias, 479 So.2d 23 (La.App. 4th Cir.1985). Since we find no manifest error in the trial court's factual determination that the contract was performed in a timely and workmanlike manner, that finding will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), Wise v. Dufresne, 537 So.2d 860 (La.App. 5th Cir.1989).
PCS asserts that the problems resulting from Marcello's financial difficulties constitute performance in an unworkmanlike manner sufficient to show a breach of contract. We disagree. The evidence makes it clear that Marcello entered into the contract in good faith believing that he would be able to perform on the contract with money received from other jobs. Both parties agreed that an advance of $4000 was given to Marcello when payment from those jobs was not received.
Although it is not specifically stated in the reasons for judgment, it seems apparent that the trial court found the written subcontract, which made no provisions for the payment of the contract price, was orally modified by the parties to provide for progress payments.
Written agreements can be orally modified subsequent to the execution of the written instrument. Maryland Casualty Company and Southern Equipment, Inc. v. Watson Marine Repair & Cleaning Service, Inc., 416 So.2d 194 (La.App. 1st Cir.1982); writ denied 421 So.2d 249 (La. 1982); Williams Engineering, Inc. v. Goodyear, 480 So.2d 772 (La.App. 5th Cir. 1985); affirmed 496 So.2d 1012 (La.1986). Modification can be presumed by silence, inaction or implication. Bank of Louisiana in New Orleans v. Campbell, 329 So.2d 235 (La.App. 4th Cir.1976) writ den. *972 332 So.2d 866 (La.1976); Williams Engineering Inc. v. Goodyear, supra. Specifically, written subcontracts can be orally modified to provide for progress payments. Lawson v. Donahue, 313 So.2d 263 (La. App. 4th Cir.1975).
A party who asserts that an obligation has been modified must prove the facts or acts giving rise to the modification. LSA-C.C. art. 1831. We have noted that:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature, but in the interest of justice that evidence may be admitted to prove that the written act was modified by a subsequent and valid oral agreement. LSA-C.C. art. 1848. Since a building contract need not be in writing, parol evidence is admissible to prove a subsequent verbal agreement to modify or even to abrogate a written construction contract. Great Southern Homes, Inc. v. Holten, 460 So.2d 662 (La.App. 1 Cir.1984), writ denied 462 So.2d 1250 [La. 1985].
Baxter v. Zeringue, 501 So.2d 327, 329 (La.App. 5th Cir.1987); writ denied. 504 So.2d 879 (La.1987).
As previously stated Marcello asserted he was assured by PCS representatives that he would be given a progress payment upon completion of the first pouring. Wallace Guillot verified that Marcello went into the March 18th meeting expecting a progress payment and was forced off the job when PCS refused to render payment.
Although plaintiff's representative testified that progress payments to a subcontractor are unorthodox, he admits PCS was to be paid in progress payments from Dupont. The financial obligations and considerations of a subcontractor are consistent with those of a general contractor, albeit on a smaller scale.
It seems likely that Marcello, when faced with the changes in his financial condition, requested an oral modification of the written contract to provide for payment as work progressed. The $4000 advance given Marcello is implied confirmation of that modification.
Conflicting testimony should be resolved on appellate review in favor of the party who prevailed on the issue in the trial court. Kuswa & Associates v. Thibaut Const. Co., 463 So.2d 1264 (La.1985); Baxter v. Zeringue, supra. We conclude that the evidence supports the trial court's finding that the written instrument was orally modified.
Once the contract was so modified, PCS had a contractual obligation to meet the progress payments. Since PCS did not perform its contractual obligation of rendering payment, it could not have placed Marcello in default at the March 18, 1987 meeting for financial insolvency.
Nor do we find credible PCS's testimony that Marcello, who was in financial distress, agreed willingly to accept responsibility for payment of all monies due to complete the project. Consequently, we reject PCS's contention that PCS dismissed Marcello for cause and is, therefore, entitled to damages for cost of completion.
We turn now to the measure of damages awarded defendant by the trial court. This case is controlled by LSA-C.C. art. 2765 which reads as follows:
The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.
Since we have found that Marcello was dismissed without cause, he is entitled to recover the cost of what he has put into the work plus the loss of potential profits, but he is not entitled to recover the full contract price. Tom Black & Associates v. Thibaut Const. Co., 420 So.2d 1150 (La. App. 5th Cir.1982), writ denied 427 So.2d 1207 (La.1983). Where the owner is unjustified in directing another to do part of the contract work, the contractor is entitled to be paid for the work he performed without any offset for the amount paid by the owner to have the other party do the work. Ryan v. Alexander, 336 So.2d 944 (La.App. 2nd Cir.1976); Finishers Drywall v. B & G *973 Realty, Inc., 516 So.2d 420 (La.App. 1st Cir.1987).
In applying that rule to the instant case, we cannot conclude that the trial judge abused his wide discretion in awarding the defendant $11,219.36 in damages in this case. In view of the conflicting testimony as to how much of the job was actually completed and the fact that all parties agree that Marcello worked for two to three weeks after being dismissed without compensation, we find no manifest error in the trial court's valuation of services rendered at $30,956.00.[1] There is no specific test which must be applied to determine the reasonable value for such services. It is a matter of equity depending upon the circumstances of each case. Morphy, Makofsky, & Masson v. Canal Place, 538 So.2d 569 (La.1989). Equity demands, in the instant case that plaintiff be reimbursed for the amounts expended on defendant's behalf, and the trial court so held.
For the foregoing reasons, the judgment of the trial court in favor of defendant and against plaintiff, for $11,219.36 and all costs is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] $34,956 less $4,000 advance payment.