595 So.2d 785 (1992)
RIVER OAKS, INC.
v.
BLUE CROSS OF LOUISIANA/LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY.
No. 91-CA-623.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1992.
Writ Denied May 8, 1992.
*786 Ewell E. Eagan, Jr., New Orleans, for plaintiff/appellant River Oaks, Inc.
Sylvan J. Steinberg, New Orleans, for defendant/appellee Blue Cross of Louisiana/Louisiana Health Service & Indem. Co.
Before GRISBAUM, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Appellant, River Oaks, Inc., appeals a judgment dismissing its suit for breach of contract against appellee, Blue Cross of Louisiana/Louisiana Health Service & Indemnity Company. We affirm.
Appellant operates a psychiatric hospital. On May 25, 1981, it entered into a Member Hospital Agreement with appellee, in which appellee agreed to pay a specified per diem rate for each covered patient admitted to appellant's hospital upon proper submission of claims information. The per diem rate, referred to as the reimbursement rate, was set initially at $221.00. In 1982, a new agreement changed the manner in which the reimbursement rate could be amended. It stated that the rate would "remain in effect until amended by either party, or termination of this agreement." The per diem rate was then increased to $252.00. Thereafter, it was again increased, in 1983 to $268.00, in 1985 to $290.00 and in 1986 to $301.00.
A new Provider Member Agreement was executed in 1983, superseding all previous agreements. However, it continued to use a Reimbursement Appendix which set forth the applicable reimbursement rate and which contained "amendment by either party" language. At all previous times, appellee proposed the rate change, it was reviewed by appellant and, after some discussion, was accepted. The new rate was usually effective September 1, of the pertinent year.
In August 1987, appellee proposed a rate change decreasing the per diem rate from $301.00 to $102.00. Appellant was not agreeable. No mutual agreement was ever reached on a revised reimbursement rate. Appellant accepted the payment under protest and continued to correspond and discuss the issue with appellee. When discussions ceased, appellant filed suit on September 4, 1988 for breach of contract. Trial was held on February 27, 1991 and judgment was rendered in favor of appellee. The trial judge stated, in his reasons for judgment, that the contract language allowed appellee to unilaterally decrease the reimbursement rate, regardless of appellant's refusal to agree. The trial judge further found that the provision allowing the unilateral change did not contradict any other provisions of the agreement or its appendices.
On appeal, appellant first contends that the unilateral rate reduction was unenforceable because the form was not signed by both parties and because such an interpretation leads to absurd consequences since it flouts contract law requiring modification by consent of the parties. Second, appellant asserts that the trial judge failed to apply the ordinary rules of construction of contracts to find that the contract was ambiguous and that the course of dealing *787 modified the contract language, resulting in the necessity of agreement on the rate. Third, appellant contends that the trial judge erred in failing to rule whether the conduct of the parties operated as an amendment and/or abrogation of the unilateral amendment provision.
Appellant argues that the 1987 unilateral reduction by appellee was unenforceable because it was not signed by both parties. Appellant asserts that La.C.C. art. 1947 provides that no contract is enforceable until it is reduced to the form contemplated by the parties. In this case, appellant contends that the contemplated form, in the language of paragraph 4 of the Provider Member Agreement, is the printed Reimbursement Appendix setting forth the current per diem rate.[1] Since that form bears signature lines for both parties, appellant concludes that it is not enforceable without both signatures, because the rate reduction is not in the form contemplated. We disagree because of the language in the appendix which permits unilateral change.
Appellant next asserts that the trial judge's interpretation, that either party could amend unilaterally, leads to absurd consequences. Appellant contends that, if either party could amend without the other's consent, a "duel" of rate adjustments could result causing utter chaos in the relations between the parties. We disagree. That simply did not happen.
In addition, appellant asserts that the law requires modification of a contract to be done by consent of both parties. Appellant cites Caple v. Green, 545 So.2d 1222 (La.App. 2nd Cir.1989) (breach of termite inspection agreement and redhibition suit) and S.J.A.E. v. St. John the Baptist School Bd., 494 So.2d 553 (La.App. 5th Cir.1986) (contract involving striking educators).
A contract is the law between the parties and extends to not only what is expressed but everything that by law, equity or custom is considered incidental to the contract or necessary to carry it into effect. La.C.C. arts. 1901, 1903, in effect at the time the contract was confected and revised in 1984. (Art. 1901 is now art. 1983. Art. 1903 has been absorbed into other various articles.) Williams Engineering, Inc. v. Goodyear, 480 So.2d 772 (La.App. 5th Cir.1985). They can be modified, abrogated or nullified by mutual consent only. Williams Engineering, Inc. v. Goodyear, supra. Professional Const. v. Marcello Contr., 550 So.2d 968 (La.App. 5th Cir. 1989). Modification can be presumed by silence, inaction or implication. Williams Engineering, Inc. v. Goodyear, supra. Professional Const. v. Marcello Contr., supra. However, once the contract is confected, one party cannot unilaterally modify its terms. S.J.A.E. v. St. John Baptist Parish School Bd., supra., Caple v. Green, supra.
The contract herein includes the Reimbursement Appendix and modification thereof requires mutual consent. Appellee, however, did not modify the contract unilaterally by reducing the rate. Appellee followed the language of the rate reimbursement provision, which had been in effect for 5 years prior to this dispute.
The burden of proof in a contract case is on the party claiming rights under the contract. La.C.C. Art. 2232, now art. 1831. Baxter v. Zerinque, 501 So.2d 327 (La.App. 5th Cir.1987). Normally, parol or testimonial evidence may not be used to vary the terms of a written contract, however, parol evidence is allowed to prove a subsequent verbal agreement to modify or abrogate the contract. Baxter v. Zerinque, supra., Professional Const. v. Marcello Contr., supra.
La.C.C. art. 1947, cited by appellant, states that it is presumed that parties do not intend to be bound unless the contract is executed in the form contemplated by the parties, when the parties have contemplated a certain form. However, we do not *788 find the argument persuasive herein, since the form contemplated by the parties was used (although unexecuted) and because of the language of the agreement that either party may amend. The avenues for appellee to deal with the rate change action of appellee are contained in the appendix, that is, to terminate the agreement or accept the change (or negotiate another rate).
Next, appellant contends the trial judge erred in failing to apply the ordinary rules of contract construction. In particular, it asserts that the parties conduct throughout the years showed a routine whereby rates were to be negotiated, agreed upon, expressed in the appendix and signed by both parties. Appellant cites C.C. art. 2053 and a parallel statutory rule of construction found in La.R.S. 10:1-205 (Commercial Laws).
C.C. art. 2053 reproduces the substance of and enlarges upon the provisions of C.C. arts. 1903, 1953 and 1965, in effect at the time this contract was formulated. It states:
"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."
La.R.S. 10:1-205 in pertinent part provides:
1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct...
3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.
4) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.
When the words of a contract are clear and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. La.C.C. art. 2046, reproduced from 1945(3) (1870). However, where there is doubt that cannot be resolved in the meaning of a provision of/or a contract, it must be interpreted against the party who furnished the text. La.C.C. art. 2056. This article is new but follows from the principle stated in C.C. art. 1958 (1870). Herein, we do not find a "doubtful provision", so the past conduct of the parties is not relevant. Also, at no time in the past had a disagreement arisen. This event was not one that the parties had previously been confronted with, and there is nothing in their past course of dealing which we can call on herein. Consequently, we find the principles enunciated in C.C. art. 2053, R.S. 10:1-205 and C.C. art. 2056 do not apply in this case.
The question of ambiguity in a contract is one of law. Borden v. Gulf States Utilities Co., 543 So.2d 924 (La.App. 1st Cir. 1989). When the interpretation of the contract is based upon factual findings, such as intent, then the issue is subject to a review for manifest error. Conoco, Inc. v. Tenneco, Inc., 524 So.2d 1305 (La.App. 3rd Cir.1988). Here, the agreement expressly provides that either party may amend the contract or terminate the agreement. It is explicit in its wording and not ambiguous.
Finally, appellant contends that the contract provision allowing unilateral amendment of the per diem rate was modified subsequently by the actions of the parties in pursuing negotiations prior to appellee's establishment of the rate. Thus, it asserts, despite contract language to the contrary, the subsequent actions should control in determining the issue of whether appellee breached the contract. Until 1987, each time a rate change was proposed, the parties entered into a discussion through appellee's representative. Appellant's witness testified that it was understood that both parties had to agree in order to effect a rate change. Appellee's witnesses stated *789 that the discussions were not an obligation under the agreement. Given the relationship of the parties and the documents, we find there was no subsequent modification.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of appeal are to be paid by appellant.
AFFIRMED.
NOTES
[1] Paragraph 4 of the Provider Member Agreement, in effect at all times pertinent to this controversy, provides:

Blue Cross of Louisiana agrees to pay the Member Provider, on behalf of the subscriber, and subject to the conditions of the Reimbursement Appendix attached to and made a part of this Agreement.